```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                        SOUTHEASTERN DIVISION
```

UNITED STATES OF AMERICA,         )
                                  )
            Plaintiff,            )
                                  )
      v.                          )    No. 1:05 CR 63 JCH
                                  )                    DDN
SAMMY CASEY,                      )
                                  )
            Defendant.            )

**ORDER AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the Court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on June 30, 2005. The parties filed post-hearing memoranda.

I.

Counsel for defendant Sammy Casey has moved to suppress the physical evidence seized on February 9, 2005 (Docs. 20, 22). From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

**FACTS**

1. At approximately 3:30 a.m. on February 9, 2005, Caruthersville, Missouri, Police Sergeant Michael Coleman was sitting in his marked patrol car in the parking lot of the Sheriff's office facility, near the building that had housed the old Sheriff's office. Coleman was conversing with Sheriff's office personnel. This area of Caruthersville, including the nearby courthouse, had experienced a large number of burglaries. As a result, as a matter of policy, police officers on patrol at night sought to identify anyone seen walking around the streets. At that time, while he was engaged in the conversation, Sgt. Coleman saw a person, dressed in dark clothes with a hood, walk past them on the street. Street lights gave some light to the area. Coleman decided to identify the pedestrian. He drove his

police car near the pedestrian, as the pedestrian walked along the sidewalk. The officer opened his passenger-side window and called to the pedestrian to "Come here for a minute." The pedestrian said, "No" and continued to walk on. The officer said, "Hey come here."

2. The officer then stopped his vehicle and, as he was exiting the vehicle, the pedestrian ran off. Sgt. Coleman immediately radioed that he was in a foot pursuit and asked for assistance. He then gave chase on foot. The subject ran around the building which had housed the old Sheriff's office and Sgt. Coleman ran after him, yelling for the subject to stop.

3. As the subject rounded one corner of the building, Sgt. Coleman saw the subject make a motion with his hand and he heard the sound of an object hitting the ground. Coleman ran past the object around the next corner where he stopped the subject 6 to 8 feet from Coleman's patrol car and handcuffed him. After he handcuffed the subject, Sgt. Coleman for the first time recognized him as Sammy Casey, whom he had investigated previously on two occasions.

4. Almost as soon as Sgt. Coleman stopped Casey, Officer Bryan Williams arrived in a patrol car. Sgt. Coleman directed Williams to look for the object that had been dropped. Williams soon found a firearm wrapped in a black elastic cloth. He radioed to Coleman to come look at the object. Coleman did so after placing Casey in his police car. Before Coleman seized the firearm, he had Williams photograph it as it lay in place. See Gov't Ex. 1.

## **DISCUSSION**

The subject matter of the motion to suppress is the firearm that was seized by the police. The motion should be denied because the Fourth Amendment was not violated by any of the officers' actions. The action of Sgt. Coleman in approaching defendant on the street at night in a public area known for crime did not involve any seizure and did not implicate the Fourth Amendment. Cf., Michigan v. Chesternut, 486 U.S. 567, 572-73 (1988).

> "[a] seizure does not occur simply because a law enforcement officer approaches an individual and asks a few questions or requests permission to search an area--even if the officer has

no reason to suspect the individual is involved in criminal activity--provided the officer does not indicate that compliance with his request is required." [<u>United States v. White</u>, 81 F.3d 775 (8th Cir.), <u>cert. denied</u>, 117 S. Ct. 518 (1996)]. Instead, the transformation of a consensual encounter into a Terry stop occurs only "when the questioning is so 'intimidating, threatening or coercive that a reasonable person would not have believed himself free to leave.'" [<u>United States v. Hathcock</u>, 103 F.3d 715, 718 (8th Cir.1997)].

<u>United States v. Beck</u>, 140 F.3d 1129, 1135 (8th Cir. 1998).

There is no seizure or action that implicates the Fourth Amendment when an officer is unable to restrain a subject's liberty and the subject does not submit to the officer. <u>See</u> <u>California v. Hodari D.</u>, 499 U.S. 621, 625-26 (1991).

In this case, defendant fled from Sgt. Coleman as soon as Coleman pulled up next to him in his patrol car and spoke to him. When defendant saw that Coleman was the police he fled. Under the circumstances which included the late hour of night, the criminal reputation of the location, and defendant's impulsive flight, the officer lawfully chased after him. <u>Illinois v. Wardlow</u>, 528 U.S. 119, 124-25 (2000).

During the foot pursuit, defendant threw down the firearm which was later seized by the police. This was an abandonment of the weapon by defendant that eliminates any standing by him to complain of the later seizure of it. <u>Id.</u> at 629; <u>Abel v. United States</u>, 362 U.S. 217, 241 (1960); <u>United States v. Tate</u>, 821 F.2d 1328, 1330 (8th Cir. 1987).

For these reasons, the motion to suppress the firearm should be denied.

II.

<u>Motions to suppress and to dismiss due to destruction of evidence</u>

Defendant orally moved on June 30, 2005, to suppress evidence or to dismiss the indictment, because the Caruthersville Police Department destroyed the audio recording of the radio transmissions made by the police during the incident of February 9, 2005.

Following the June 30 hearing, the court has been provided with affidavits that indicate that the City of Caruthersville Police Department does not have its own radio dispatching system. Rather, the

Caruthersville police use the Pemiscot County Sheriff's Office radio system. This system records all radio traffic sent by the officers and the dispatcher. However, under the usual policy and practice of the Sheriff's Office, unless there is a request for the preservation of certain transmissions, the audio recordings are erased 30 days after the recordings are made. In this case, there was no such request and the recordings of February 9, 2005 radio transmissions were erased. (Doc. 28 attach.) Further, the permanent written log entries of the transmissions of February 9, 2005, have been provided to defense counsel. (Id.)

Upon this record, the court finds and concludes that the erasure of the audio recordings of the radio transmissions of February 9, 2005, occurred as a result of the usual policy and procedure of the Sheriff's Office and not as a result of any bad faith on the part of the police. Therefore, the defendant is entitled to no relief on account of the erasure of the recordings. Arizona v. Youngblood, 488 U.S. 51, 56-8 (1988); Tyler v. Purkett, 2005 WL 1557765 at *3 (8th Cir. July 5, 2005); United States v. Jobson, 102 F.3d 214, 218 (6th Cir. 1996).

Therefore, these motions should be denied.

III.
### Motion to dismiss due to treaty violation

Defendant has moved to dismiss the indictment because, as a member of the Moorish religion, he is entitled to relief under the Treaty of Peace between the United States and Morocco. Defendant argues that he has not been rendered the consular assistance called for by the treaty.

The Treaty between the Empire of Morocco and the United States, entered in 1836, provides for consular assistance under certain circumstances:

> Art. 20.
> If any of the citizens of the United States, or any persons under their protection, shall have any dispute with each other, the Consul shall decide between the parties; and whenever the Consul shall require any aid, or assistance from our government [of Morocco], to enforce his decisions, it shall be immediately granted to him.

> Art. 21.
> If a citizen of the United States shall kill or wound a Moor, or, on the contrary, if a Moor shall kill or wound a citizen of the United States, the law of the Country [wherein the incident occurred] shall take place, and equal justice shall be rendered, the Consul assisting at the trial; and if any delinquent shall make his escape, the Consul shall not be answerable for him in any manner whatever.

See The Barbary Treaties: Morocco--Treaty of Peace, September 16, 1836, The Avalon Project at Yale Law School, found at http://www.yale.edu/lawweb/avalon/diplomacy/barbary/bar1836t.htm.

Even assuming defendant is entitled to consular assistance in this case, which the court does not find, he is not entitled to the suppression of evidence or the dismissal of the action. The seizure of the subject firearm occurred on account of defendant's abandonment of it, a factual circumstance factually independent of any interest defendant has in consular assistance. Further, the decision to prosecute defendant is constitutionally independent of any consular interest in assistance that might have been rendered to defendant. Cf., United States v. Ortiz, 315 F.3d 873, 886 (8th Cir. 2002)(case arising under consular notification provisions of the Vienna Convention); United States v. De La Pava, 268 F.3d 157, 165-66 (2nd Cir. 2001)(failure to comply with Vienna Convention consular notification provision is not a basis for dismissing indictment); United States v. Emuegbunam, 268 F.3d 377, 391-94 (6th Cir. 2001); United States v. Lombera-Camorlinga, 206 F.3d 882, 885-86 (9th Cir. 2000); United States v. Cordoba-Mosquera, 212 F.3d 1194, 1195-96 (11th Cir. 2000).

IV.

Motion to suppress prior convictions

Defendant has moved to suppress the admission of his prior convictions (Docs. 23, 29.) The one count indictment alleges that defendant on February 9, 2005, possessed a firearm after having been convicted of two felony offenses, in violation of 18 U.S.C. § 922(g)(1). The indictment alleges that the convictions occurred in 1973 (second degree murder in Missouri circuit court) and in 1983 (first degree assault in Missouri circuit court). Defendant alleges that he was

coerced into pleading guilty to the murder charge and that he was coerced into having the 1983 case tried to the court without a jury. He also alleges that he has completed his sentences for these offenses and that their use against him constitutes a violation of the Double Jeopardy Clause of the Fifth Amendment.

First, the proof of the state court convictions in this case is not for the purpose of punishing defendant for those earlier criminal acts, but only to criminalize the alleged possession of a firearm by him on February 9, 2005. Second, the constitutional prohibition against Double Jeopardy does not apply to limit subsequent prosecutions for the same offense by different sovereigns, i.e., the state government and the federal government. United States v. Leathers, 354 F.3d 955, 959-60 (8th Cir. 2004).

Finally, defendant may not collaterally attack the constitutionality of the earlier convictions in this case. Lewis v. United States, 445 U.S. 55 (1980); United States v. Sharpley, 399 F.3d 123 (2nd Cir. 2005).

For these reasons, the motion should be denied.

Whereupon,

**IT IS HEREBY RECOMMENDED** that the motions of defendant to suppress evidence and to dismiss the indictment (Docs. 20, 22, 23, and 24) be denied.

The parties are advised they have ten (10) days to file written objections to this Order and Recommendation. The failure to file objections may result in a waiver of the right to appeal issues of fact.

**IT IS HEREBY ORDERED** that, pursuant to the Administrative Order of the Court, the case be set for trial.

_/s/ David D. Noce_
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on July 21, 2005.